## Mowbray & Robinson Lumber Company v. Reynolds et al

(Decided June 21, 1929.)

E. C. O'REAR and E. C. HYDEN for appellant.

HENRY L. SPENCER, A. H. PATTON and A. F. BYRD for appellees.

OPINION OF THE COURT BY DRURY, COMMISSIONER—Affirming.

The appellant (hereinafter referred to as the lumber company) sued Elihu Reynolds et al. (hereinafter referred to as Reynolds Bros.) upon two notes aggregating $1,250 secured by a mortgage. The trial resulted in the lumber company's petition being dismissed, and upon their counterclaim Reynolds Bros. recovered a judgment against it for $800. Reynolds Bros. admitted the execution of the notes and mortgages in the first paragraph of their answer, and pleaded payment. In a second paragraph they pleaded this payment was made in and by a sale made by them to the lumber company of a certain lot of logs for $3,000, out of which they alleged the lumber company was to deduct enough to pay this $1,250 and the interest thereon, also a certain debt of $800 due the Harmount-Wolfe Tie Company.

Reynolds Bros. asked that this $1,250 debt be adjudged paid, that the notes therefor be canceled, that they have judgment against the lumber company for the $800 it was to pay the Harmount-Wolfe Tie Company, and for the $928.75 that would be left of the $3,000 after paying those matters and interest on them.

In a third paragraph they made Sambo Deaton a party and asked a judgment against him for $400 for work done for him in getting these logs ready for market. They asked for other relief in this third paragraph and their fourth paragraph upon matters that are not involved on this appeal. We do not find in the record any reply of the lumber company, but there is an order controverting affirmative allegations of all pleadings not responded to.

Reynolds Bros. had made in July, 1926, a contract to sell, cut, and deliver certain logs, and this contract had been assigned to the appellant lumber company, and to it there was also assigned a certain note for $1,000, signed by Reynolds Bros.

There was a lien on the timber that Reynolds Bros. were cutting, in favor of the Harmount-Wolfe Tie Company, for $800. Of course, the lumber company wanted to get timber that was free of lien, and Reynolds Bros. wanted to get into such a situation that they would have no trouble with their lienholder when they began cutting this timber. Therefore the lumber company on May 4, 1927, made a new contract (266-B) with Reynolds Bros. by which the contract of 1926 was modified. This new contract is in two separate papers, both of which are dated May 4, 1927. By these papers the price to Reynolds Bros. on the first 200,000 feet cut, was reduced $4 per 1,000 on all grades, and the lumber company undertook to pay to the Harmount-Wolfe Tie Company $4 per 1,000 upon the first 200,000 feet of logs delivered and in that way to pay the $800 debt to it. Reynolds Bros. needed some more money, and on March 15, 1927, the lumber company loaned them $250 more, and, to secure this and the $1,000 they already owed the lumber company, they gave the lumber company a mortgage on several pieces of property. After that was done, the lumber company wrote the Harmount-Wolfe Tie Company a letter in which they promised to take this $800 out of these logs when delivered. As to any timber delivered in excess of 200,000 feet, the contract of May 4, 1927, provided the old price was to apply. Reynolds Bros. began doing the things that were required of them under this contract relative to the timber, but they were not pushing the work as fast as the lumber company wanted it pushed. Accordingly, they arranged or endeavored to arrange with one Sambo Deaton to assist them, and Deaton, M. F. Reynolds, and W. H. Hyden, representing the lumber company, met at a shack in the woods, where this work was going on. Deaton on learning of the debts of Reynolds Bros. refused to have anything further to do with the logs unless Hyden, as representative of the lumber company, could arrange with Reynolds Bros. to get them out of it. M. F. Reynolds and Hyden retired and had a talk and what occurred in that conversation is only known to these two, and in their testimony they do not agree at all about it. According to M. F. Reynolds, it was agreed then between him, as the representative of Reynolds Bros., and Hyden, as the representative of the lumber company, that the logs cut would yield 200,000 feet, which would be worth $6,000, when delivered, that it was worth half of that to deliver them, and Reynolds

claims to have then sold to the lumber company the interest of Reynolds Bros. in the logs for $3,000. Hyden says no such thing occurred. The lumber company contends that all that occurred was that Reynolds Bros. took in Sambo Deaton as a partner. In this state of affairs, we must look to the acts and conduct of the parties to find just what was done. On that day Reynolds Bros. gave to the lumber company the following order:

"August 18th, 1927.

"The Mobray & Robinson Lumber Co., West Irvine, Kentucky—Sirs: Mr. Sambo Deaton has agreed to deliver all the logs sold to you by us on Camp Creek, under contract 266-B.

"You will please pay him for the logs less amount advanced us and amount you are to pay Harmount-Wolfe Tie Company, when logs are measured.

"Reynolds Brothers
"By M. F. Reynolds."

Also, on this day the lumber company made a contract with Sambo Deaton to deliver all these logs to Maloney, Kentucky, by April 1, 1928, and in that contract they speak of these logs as "All the logs sold by Reynolds Brothers to the Mowbray & Robinson Lumber Company." After that contract was made, Deaton took charge of the logs and employed Reynolds Bros. to assist him in delivering them, and it is for this work, done after that date, that Reynolds Bros. made their claim for $400 against Deaton. Deaton admits they worked for him, but says the amount due them is only $235. Deaton in turn had trouble with the lumber company, and he quit the work. The logs were never delivered, and in the course of this litigation a receiver was appointed to take charge of and to sell them. Some one must suffer a loss, for the logs have been lying there in the woods, have become deteriorated, and will not sell for anything like their former value, and the question is: Who is to bear the loss? That depends on who owned these logs after August 18, 1927. Certainly Reynolds Bros. did not own them, for they had given the lumber company an order to pay Deaton for them, and it had made a contract with Deaton to deliver these logs, and had described them in that contract as "the logs bought of Reynolds Brothers." Shortly after that, Mr. Hyden saw Mr. Elihu Reynolds,

and the latter testifies he asked Hyden about the logs and Hyden said that Reynolds Bros. were out of it, had nothing further to do with it. Hyden admits this. The lumber company seems to regard as very important two letters which were filed by Mr. Hyden in his evidence. One of these letters is dated November 10, and the other November 27. The first is: "As per contract on logs of Reynolds Brothers, whereby S. B. Deaton is to haul, you were to have the logs measured as soon as the tramroad built to river; this road will be completed at once, and this is to notify you to let Dave Steele come to our place at once, November 18th, or 19th for to measure up the logs." The second is: "We got your letter and we are at the church house with the tramroad, and expect to get to river by Friday. If we do we will call you over phone and you can come Friday and measure for us Saturday." Both letters are signed, "Deaton and Reynolds." We are unable to see in these letters anything to show that the lumber company was not the owner of these logs It had contracted with Deaton to deliver the logs, it knew Deaton and Reynolds were at work at them, it wanted the logs measured and branded before they were put in the river, and all these letters amount to is notice that they were ready for that to be done.

The trial court by its judgment canceled the $1,250 debt, ordered the mortgage to secure it released, and gave judgment in favor of Reynolds Bros. and against the lumber company for the $800 debt due Harmount-Wolfe Tie Company. In view of the admissions made by Mr. Hyden on his cross-examination, questions 47, 48, and 49, and on his second recross-examination, we do not see how the court could have found otherwise.

The judgment is affirmed.